UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DANIEL HUTCHINS,

        Plaintiff,                  Case No. 2:25-cv-218

v.                                     Hon. Hala Y. Jarbou

MICHAEL HAVENS et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's Eighth Amendment claims and claims regarding Plaintiff's access to the grievance process for failure to state a claim. Plaintiff's First Amendment retaliation claims against Defendants remain in the case.

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County, Michigan. The events about which he complains, however, occurred at the Newberry Correctional Facility (NCF) in Newberry, Luce County, Michigan. Plaintiff sues Physician's Assistant Michael Havens and Nurse Sandra Wilson.

Plaintiff alleges that he lodged both written and verbal grievances against NCF staff during his incarceration from January 10, 2025, through February 28, 2025. (Compl., ECF No. 1, PageID.3.) Plaintiff also filed lawsuits, including an unrelated action against medical staff at another MDOC facility. (*Id.*)

On or about January 27, 2025, Plaintiff was summoned to healthcare where he was seen by Defendant Havens. (*Id.*) During his visit, Plaintiff informed Defendant Havens of his "extreme depression and anxiety" and inability to sleep due to nightmares. (*Id.*) Defendant Havens refused to refer Plaintiff to a mental health provider, telling Plaintiff, "I see you like to sue medical staff. I'm not giving you another staff to sue." (*Id.*) Defendant Havens told Plaintiff to buy aspirin from the prison store. (*Id.*) When Plaintiff told Defendant Havens that he intended to file a grievance, Defendant Havens told Plaintiff, "[T]hen I will discontinue all your medications and wipe my a\*\* with your complaint." (*Id.*, PageID.3–4 (asterisks added).) Plaintiff filed his grievance and, the following day, was required to return his supply of Famotidine and Senna. (*Id.*, PageID.4.) When Plaintiff spoke with Defendant Wilson, Defendant Wilson told Plaintiff that Defendant Havens discontinued Plaintiff's prescriptions because Plaintiff filed a grievance. (*Id.*) Plaintiff alleges that, as a result of having his medications discontinued, Plaintiff suffered from "severe heartburn, acid reflux and pain and suffering in Plaintiff's stomach." (*Id.*)

On or about January 30, 2025, Plaintiff spoke with Defendant Wilson regarding his "severe acid reflux and digestive tract problems which caused pain and suffering from heartburn." (*Id.*) Defendant Wilson told Plaintiff to submit a kite but also stated, "I wouldn't hold my breath. Havens is pretty pissed at you." (*Id.*) Plaintiff submitted a kite that day but did not receive a response. (*Id.*)

On or about February 11, 2025, Plaintiff was seen by a non-party nurse for his annual health screen. (*Id.*, PageID.5.) When he asked about his medication, the non-party nurse told Plaintiff that Defendant Wilson was looking into it. (*Id.*) However, when Plaintiff spoke to Defendant Wilson, she told Plaintiff that he would not be seen for his complaints of acid reflux "because [he] wrote a grievance about it." (*Id.*) Plaintiff then submitted a grievance against both Defendants Havens and Wilson. (*Id.*)

On February 12, 2025, Plaintiff was summoned to healthcare by Defendant Wilson, who told Plaintiff, "Now you[ are] f***ing grieving me too. F*** you. That will not fly." (*Id.* (asterisks added).) Defendant Wilson further told Plaintiff, "This is not a grievable issue. I agree with Havens, screw your Pepcid." (*Id.*) Plaintiff submitted a kite for medical treatment but did not receive a response. (*Id.*, PageID.6.)

As a result of the events described in Plaintiff's complaint, Plaintiff brings claims for retaliation under the First Amendment, Eighth Amendment claims for deliberate indifference to Plaintiff's medical conditions, and First Amendment claims for "inhibiting the Plaintiff's free speech and denying Plaintiff access to the grievance procedure." (*Id.*, PageID.6–7.) He seeks compensatory and punitive damages. (*Id.*, PageID.8.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

3

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      A.    **First Amendment Retaliation Claims**

Plaintiff claims that Defendants refused to provide Plaintiff with medical care in retaliation for Plaintiff having filed past grievances and lawsuits. Retaliation based upon a prisoner's exercise

of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Taking Plaintiff's allegations as true, as is required at this stage, Plaintiff's First Amendment retaliation claims against Defendants will not be dismissed on screening.

### B.     Eighth Amendment Medical Care Claims

Plaintiff claims that Defendant Havens refused to provide Plaintiff with mental health treatment for Plaintiff's "extreme depression and anxiety" and trouble sleeping due to nightmares. (Compl., ECF No. 1, PageID.3.) Plaintiff also faults both Defendants Havens and Wilson for discontinuing Plaintiff's treatment for heartburn and acid reflux. (*Id.*, PageID.4–6.)

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care under the Eighth Amendment has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's

need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Here, Plaintiff's claims concerning Defendants' refusal to treat Plaintiff's medical conditions fail to satisfy the objective prong.

Plaintiff alleges that he suffers from anxiety, depression, loss of sleep, nightmares, heartburn, and acid reflux. There is nothing about loss of sleep or nightmares that would obviously demand professional medical attention. And various courts have observed that "GERD—also known as acid reflux—is a common problem and in many instances is not a serious condition warranting [constitutional] scrutiny." *Tennyson v. Raemisch*, 638 F. App'x 685, 689 (10th Cir. 2015); *Williamson v. Bolton*, No. 3:18-CV-529-CHB, 2019 WL 96306, at *5 (W.D. Ky. Jan. 3, 2019) ("Plaintiff's vague allegation that he was in pain due to acid [reflux] is not sufficient to establish a serious medical need to meet the objective standard of a deliberate indifference claim."); *Watson-El v. Wilson*, No. 08 C 7036, 2010 WL 3732127, at *13 (N.D. Ill. Sept. 15, 2010) ("The court finds as a matter of law that the plaintiff's acid [reflux] did not rise to the level of a serious medical need for purposes of Eighth Amendment analysis."); *Fox v. Rodgers*, No. 08-CV-14727, 2010 WL 2605940, at *3 (E.D. Mich. June 8, 2010), *report and recommendation adopted,* No. 08-CV-14727, 2010 WL 2605832 (E.D. Mich. June 25, 2010). ("Plaintiff falls short of satisfying the objective component. He did not present any authority for the proposition that his acid reflux disease presented a serious medical need."). Finally, while severe mental anxiety and depression or an anxiety or depressive disorder could amount to a serious medical need, Plaintiff's references to "anxiety" and "depression" alone, without more, do not plausibly suggest a medical

7

need posing a substantial risk of serious harm. Plaintiff does not describe the extent of his anxiety and depression or the effects of these conditions on Plaintiff's life if left untreated.

Accordingly, because Plaintiff fails to plead sufficient facts to plausibly suggest that the that the medical needs at issue were sufficiently serious, the Court will dismiss Plaintiff's Eighth Amendment medical care claims.

### C. Claims Regarding Plaintiff's Use of the Grievance Process

Plaintiff alleges that Defendant Wilson interfered with Plaintiff's use of the grievance process. (Compl., ECF No. 1, PageID.6.) However, Plaintiff fails to state any cognizable claim under § 1983.

First, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, 19 F.3d 1435 (6th Cir. 1994).

Second, any actions (or inactions) of Defendants with regard to the grievance process could not constitute a violation of the First Amendment right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271,

285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Third, Plaintiff has not been barred from all means of petitioning the government for redress of grievances. Even if Plaintiff had been improperly prevented from filing a grievance, his right to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Accordingly, Plaintiff cannot state a claim concerning his use of the grievance process upon which relief may be granted.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Plaintiff's Eighth Amendment claims and claims regarding Plaintiff's access to the grievance process will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation claims against Defendants remain in the case.

An order consistent with this opinion will be entered.

Dated: September 19, 2025         /s/ Hala Y. Jarbou
                                  HALA Y. JARBOU
                                  CHIEF UNITED STATES DISTRICT JUDGE